**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUHAILY I. VAZQUEZ CALDERON,** | : | **Civil No. 1:21-cv-1075** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM OPINION</u>**

## I.    <u>Introduction</u>

The Supreme Court has underscored for us the limited scope of our

substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see,
> e.g.</u>, <u>Perales</u>, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Suhaily Vazquez Calderon filed an application for supplemental security income under Title XVI of the Social Security Act on June 6, 2017. A hearing was held before an Administrative Law Judge ("ALJ"), and the ALJ found that Vazquez Calderon was not disabled and denied her application for benefits. Vazquez Calderon now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. However, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.  **Statement of Facts and of the Case**

On June 6, 2017, Vazquez Calderon applied for supplemental security income, alleging an onset of disability on June 1, 2015. (Tr. 92). She alleged disability due to back problems, depression, and fibromyalgia. (Id.) She was 40 years

old on the date she filed for benefits, she had a high school education, and she had no prior relevant work experience. (Tr. 34).

With respect to her alleged physical impairments, treatment notes from Wellspan Pain Management indicated that Vazquez Calderon reported constant neck pain since August of 2016. (Tr. 351). A physical examination revealed a nonantalgic gait, and that Vazquez Calderon could toe and heel walk normally. (Tr. 352). An MRI of Vazquez Calderon's cervical spine in December of 2016 showed C5-6 broad-based left central disc protrusion with an annular tear, a mild C6-7 disc bulge, small noncompressive C7-T1 central disc protrusion with an annular tear, and straightening of the normal cervical lordosis, which was possibly due to muscle spasm or positioning. (Tr. 328). She received epidural steroid injections in January and February of 2017, and in March she reported 80-85% ongoing relief. (Tr. 339). Vazquez Calderon also treated for right hand pain and carpal tunnel symptoms at this time, and it was recommended that she try a wrist splint. (Tr. 333).

At a follow up appointment in May of 2017, it was noted that Vazquez Calderon had been in an automobile accident in April, and that she was experiencing migraines. (Tr. 373-74). She believed her headaches were caused by dental issues she was having. (Id.) On examination, Vazquez Calderon had moderate paraspinal muscle spasm, but had no effusion, no erythema, and full active and passive range of motion. (Tr. 376).

In June of 2017, during the relevant period, Vazquez Calderon presented to Dr. Kristina Nivus, D.O., at York Hospital Community Health Center with complaints of low back pain and numbness and tingling in her legs. (Tr. 369). She was told that her back pain was likely compounded by her fibromyalgia. (Id.) It was noted that Vazquez Calderon demonstrated multifocal trigger point tenderness, along with low back and neck pain. (Tr. 370). On physical examination, Vazquez Calderon had no edema, but had significant lumbar paraspinal muscle spasm on her right side. (Tr. 372). Dr. Nivus referred her to rheumatology for an evaluation, and she was also referred to physical therapy. (Tr. 366).

Vazquez Calderon began physical therapy in June of 2017. (Tr. 404). She exhibited a positive straight leg raise bilaterally and decreased flexibility, but it was noted she ambulated without an assistive device, and her bilateral lower extremity range of motion was within functional limits. (Tr. 404-05). She was ultimately discharged from physical therapy in July with a home exercise program, reporting no significant improvement in her pain since starting therapy. (Tr. 760). At an appointment in August with Dr. Joyce Burd, M.D., Dr. Burd started Vazquez Calderon on different medication due to complaints of drowsiness and also recommended an exercise program. (Tr. 467). A physical examination revealed 2+ symmetrical reflexes, no objective synovitis of the peripheral joints of the upper or

lower extremities, tenderness about the elbows bilaterally, and discomfort with range of motion of her shoulders and lower extremities. (Tr. 470).

Vazquez Calderon underwent an internal medicine examination with Dr. Carla Huitt, M.D., on August 28, 2017. (Tr. 491-505). Vazquez Calderon complained of back and neck pain, as well as muscle spasms and numbness in her legs. (Tr. 491). It was noted that she did not use an assistive device. (Tr. 492). Her activities of daily living included cooking, self-hygiene, and listening to music. (Id.) She was unable to clean, do laundry, shop, or provide childcare. (Id.) On physical examination, Dr. Huitt noted that Vazquez Calderon was able to walk on heels and toes and squat while hanging onto the table, she did not need assistance getting on and off of the examination table, and she had a normal gait. (Tr. 493). She had a negative straight leg raise bilaterally, but it was noted that she had pain at every spot that was touched on her body, including non-fibromyalgia spots. (Tr. 494). Her grip strength was 5/5 bilaterally, and her strength in her upper and lower extremities was 5/5. (Id.)

On this score, Dr. Huitt opined that Vazquez Calderon could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally; could sit for a total of 6 hours per day, and stand and walk for a total of 2 hours per day; she could occasionally reach with her upper extremities, and could frequently handle, finger, feel, push, and pull; she could occasionally use foot controls; and she could

occasionally climb stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 496-99).

In September of 2017, Vazquez Calderon was seen at York Hospital for complaints of chest wall pain with tightness. (Tr. 719). It was noted that she had no back pain or headache at this time. (Id.) On examination, she exhibited no tenderness or swelling, normal alignment in her back, and no focal neurological deficits. (Tr. 720). It was further noted that she was having improvement with anti-inflammatories and her pain medication regimen. (Tr. 721). She was discharged in stable condition. (Tr. 722). In November of 2017, Vazquez Calderon had carpal tunnel release surgery. (Tr. 680).

Dr. Wadicar Nugent, M.D., rendered a consultative opinion regarding Vazquez Calderon's disability application on September 5, 2017. Dr. Nugent opined that Vazquez Calderon could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; could stand and walk for a total of 4 hours and sit for a total of 6 hours in an 8-hour workday; had no pushing and pulling limitations; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders or scaffolds. (Tr. 99-100).

A few years later, Vazquez Calderon presented to Wellspan Health in June of 2020 to establish medical care after travelling back to the United States from Puerto Rico. (Tr. 680). She complained of right arm and neck pain, and she reported that

her fibromyalgia pain was poorly controlled, but her migraines had resolved. (Id.)
At a follow up appointment, Vazquez Calderon had a slow gait and appeared to be
in pain with movement. (Tr. 667). She had normal range of motion, no edema,
swelling, or deformity, but had decreased strength and tenderness. (Id.)

In July of 2020, Vazquez Calderon was seen for a neurosurgical consultation
due to her neck pain. (Tr. 697). She complained of pain radiating into her shoulders
and arms, and she stated that her arms felt weak. (Tr. 698-99). At a follow up
appointment, Vazquez Calderon reported improvement with her GERD symptoms,
and her fibromyalgia symptoms were improving with her medication. (Tr. 658). On
July 23, 2020, treatment notes indicated that Vazquez Calderon had a normal gait,
5/5 strength in her upper and lower extremities bilaterally, and a palpation of the
cervical, thoracic and lumbar spine did not reveal any spinal deformity, tenderness,
or muscle spasms. (Tr. 688). It was further noted that Vazquez Calderon was to begin
physical therapy in August. (Id.) One week later, a physical examination revealed
5/5 strength in the bilateral upper and lower extremities, 5/5 grip strength, no edema,
clubbing, or cyanosis, and normal reflexes. (Tr. 711). An MRI at this time showed
C5-6 broad-based left central disc protrusion with an annular tear, mild C6-7 disc
bulge, small noncompressive C7-T1 disc protrusion with an annular tear, and
straightening of the normal cervical lordosis. (Tr. 713).

As for her mental health impairments, Vazquez Calderon had a documented history of depression and anxiety. Treatment notes from York Psychiatry in June of 2017 listed diagnoses of panic disorder without agoraphobia, major depressive disorder, and generalized anxiety disorder. (Tr. 647). At this visit, Dr. Laura Potts, M.D., noted that Vazquez Calderon's mood was better, and her depression was slightly improved. (Id.) A mental status examination revealed a depressed mood but normal concentration, intact thought process, appropriate affect, normal speech and thought content, and good insight and judgment. (Tr. 648-49).

Throughout the relevant period, Vazquez Calderon continued to treat with counseling services. Thus, on June 20, 2017, Vazquez Calderon reported that she had attended a family barbeque, and that she went to church with her mother. (Tr. 416). The counselor noted that she felt calmer when the session had ended, and that she had improved her trauma that had been caused by witnessing an accident. (Id.) In July, Vazquez Calderon stated that she worried about her children, specifically her son who had witnessed a shooting, but it was noted that she was making moderate progress. (Tr. 414, 641). On examination, her insight and judgment were good, concentration and speech were normal, thought process was logical, but her mood was depressed and anxious. (Tr. 642-43). Dr. Potts increased her medication. (Tr. 642).

In August, she reported her depression had improved since the increase in her medication. (Tr. 637). However, in October 2017, she reported her depression and anxiety had worsened due to family stressors. (Tr. 627). A mental status examination revealed largely normal findings, although her mood was anxious. (Tr. 628-29). Treatment notes from early December indicate that Vazquez Calderon felt her medications were working well. (Tr. 621). Vazquez Calderon was discharged from York Psychiatry in January of 2018 after she reported she was traveling to Puerto Rico for a period of time. (Tr. 523). Upon discharge, it was noted that her condition had improved. (Id.)

A state agency consultant, Dr. George Ondis, Ph.D., opined in August of 2017 that Vazquez Calderon had a mild limitation in interacting with others and understanding, remembering, and applying information. (Tr. 97). He further opined that she had a moderate limitation in adapting or managing herself and concentrating, persisting, and maintaining pace. (Id.) He opined that Vazquez Calderon had the ability to function in production-oriented jobs that required simple decisionmaking, she could sustain an ordinary routine, and she could adapt to routine changes in the workplace. (Tr. 103). Dr. Ondis stated that Vazquez Calderon maintained the ability to understand, retain, and follow simple instructions, and that she can do simple, routine, and repetitive tasks. (Id.)

In June of 2020, after Vazquez Calderon returned to the United States and reestablished medical care, it was noted that her depression was under control on her current medications. (Tr. 681). In July, Dr. Christian Kcomt, M.D., noted that she was feeling depressed and lacked energy and motivation, but on mental status examination, her affect was appropriate, thought process was logical and goal directed, and her insight and judgment were limited. (Tr. 788-89). Dr. Kcomt increased her Zoloft and prescribed her medication to help with her insomnia. (Tr. 789). In August, her Zoloft was decreased as she was having side effects. (Tr. 786).

Vazquez Calderon's counseling treatment plan was updated in August of 2020. (Tr. 781-85). Therapist Jose Batista, M.S., filled out a questionnaire on September 1, 2020. (Tr. 775-78). Mr. Batista opined that Vazquez Calderon had a moderate limitation in identifying and solving problems; a mild to moderate limitations in interacting with others; a mild to moderate limitation in her ability to sustain concentration, persistence, or pace, with a marked limitation in the ability to sustain an ordinary routine or regular attendance at work and the ability to work a full day without resting; and a moderate to marked limitation in her ability to adapt to changes and manage her psychologically based symptoms. (Tr. 775-77).

It is against this medical backdrop that the ALJ conducted a hearing in Vazquez Calderon's case on October 20, 2020. (Tr. 69-91). At the hearing, Vazquez Calderon testified using a Spanish-speaking interpreter, and a Vocational Expert also

testified. (Id.) Following the hearing, on October 28, 2020, the ALJ issued a decision denying Vazquez Calderon's application for benefits. (Tr. 16-40).

In that decision, the ALJ first concluded that Vazquez Calderon had not engaged in substantial gainful activity since June 6, 2017, the date she filed her application. (Tr. 24). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Vazquez Calderon had the following severe impairments: fibromyalgia, chronic pain syndrome, degenerative disc disease of the cervical and lumbar spine, major depressive disorder, generalized anxiety disorder, PTSD, and panic disorder without agoraphobia. (Id.) The ALJ found Vazquez Calderon's carpal tunnel syndrome, GERD, and migraine headaches to be nonsevere impairments. (Tr. 24-25). At Step 3, the ALJ determined that Vazquez Calderon did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 25-29).

Between Steps 3 and 4, the ALJ concluded that Vazquez Calderon

[Had] the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). She has a total stand/walk limitation of four hours. She is limited to occasional climbing of ramps and stairs, occasional balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. Work is limited to simple, routine repetitive tasks involving only simple work related decisions with few, if any, work place changes.

(Tr. 29).

In reaching this RFC determination, the ALJ considered the medical evidence set forth above, the medical opinion evidence, and Vazquez Calderon's statements regarding her limitations. With respect to the medical opinion evidence regarding the alleged physical impairments, the ALJ considered the opinions of Dr. Huitt and Dr. Nugent. The ALJ found Dr. Nugent's opinion persuasive. (Tr. 33). The ALJ reasoned that this opinion was consistent with documented clinical examination findings of a normal gait, negative straight leg raise tests, 5/5 strength in the lower and upper extremities, and normal range of motion, among others. (Id.) The ALJ found Dr. Huitt's opinion partially persuasive, in that her opinion was consistent with the normal musculoskeletal examination findings. (Tr. 34). However, the ALJ reasoned that the manipulative limitations as opined by Dr. Huitt were not consistent with her own clinical examination findings of 5/5 grip strength, intact hand and finger dexterity, and no sensory deficits. (Id.)

With respect to the alleged mental impairments, the ALJ considered the opinions of Dr. Ondis and Mr. Batista. (Tr. 32-34). The ALJ found Dr. Ondis' opinion persuasive. (Tr. 33). The ALJ reasoned that this opinion provided explanatory comments which referenced clinical examination findings. (Tr. 32-33). The ALJ stated that this opinion was consistent with the claimant's longitudinal records, which revealed largely normal mental status examination findings. (Tr. 33). The ALJ found Mr. Batista's opinion unpersuasive. (Tr. 34). On this score, the ALJ

reasoned that Mr. Batista's opinion was not entirely consistent with the overall medical record, in that the normal examination findings did not support the marked limitations as opined by Mr. Batista. (Id.)

The ALJ also considered Vazquez Calderon's statements regarding her limitations but ultimately concluded that her statements were not entirely consistent with the medical evidence. (Tr. 29-32). The plaintiff testified that she needed assistance bathing and dressing herself; she did not cook, do laundry, grocery shop, drive, or maintain the lawn; and she took two naps a day. (Tr. 76-78). She stated that her medications were not helping her, and that they made her dizzy and sleepy. (Tr. 78-79). Vazquez Calderon testified that she experienced headaches at least four times per week; she had trouble lifting and carrying things with her right hand; she had neck pain on the right side which persisted after injections; and she had constant back pain that radiated to her legs and numbness in her feet. (Tr. 80-82, 85). She reported that she can only sit for 10 to 15 minutes until her pain starts. (Tr. 85). Regarding her mental impairments, she stated that she had memory and concentration issues, low energy, and she worried a lot. (Tr. 83).

The ALJ found that Vazquez Calderon's statements were not entirely consistent with the medical record. (Tr. 30). The ALJ reasoned that her statements were not consistent with the documented clinical findings of a normal gait, negative straight leg raise testing, 5/5 strength in her bilateral upper and lower extremities,

5/5 grip strength bilaterally, normal range of motion, and no musculoskeletal swelling or tenderness. (Id.) The ALJ further reasoned that the plaintiff treated with injections and medications with which she reported some success. (Tr. 31). Regarding her mental impairments, the ALJ found that her statements were not consistent with the clinical evidence of largely normal mental status examination findings. (Id.) The ALJ also found her statements to be inconsistent with her activities of daily living, as she had reported spending time with her family, going to restaurants, going to the mall, and going to the park with her nephews. (Id.) Moreover, the treatment notes indicated that her medications improved her depression and anxiety. (Id.)

The ALJ then found at Step 4 that Vazquez Calderon had no relevant past work but found at Step 5 that there were jobs in the national economy that she could perform, such as bakery worker, electrical accessories assembler, and small products assembler. (Tr. 35). Having reached these conclusions, the ALJ determined that Vazquez Calderon was not entirely disabled and denied this claim. (Tr. 36).

This appeal followed. (Doc. 1). On appeal, Vazquez Calderon challenges the adequacy of the ALJ's decision, arguing that ALJ erred in determining her RFC and in the treatment of the medical opinion evidence. As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the

record, we conclude that the ALJ's decision is supported by substantial evidence, and we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

16

a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512

F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status

of a claim requires the correct application of the law to the facts"); see also Wright

v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on

legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary

review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of

review. First, when conducting this review "we are mindful that we must not

substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d

607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.

2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather

our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the

burden of articulation demanded by the courts to enable informed judicial review.

Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the

Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ

particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.   <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed

to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in June of 2017, shortly after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior

Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the

persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a

> treating source's opinion and rejecting other portions"); <u>Connors v.
> Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is

no evidence of any credible medical opinion supporting a claimant's allegations of

disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." <u>Cummings</u>, 129 F.Supp.3d at 214–15.

### D.    <u>Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms</u>

The interplay between the deferential substantive standard of review that

governs Social Security appeals, and the requirement that courts carefully assess

whether an ALJ has met the standards of articulation required by law, is also

illustrated by those cases which consider analysis of a claimant's reported pain.

When evaluating lay testimony regarding a claimant's reported degree of pain and

disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations,
> and this Court defers to the ALJ's assessment of credibility. <u>See Diaz v.
> Comm'r</u>, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether
> there is substantial evidence to support an administrative law judge's
> decision, we owe deference to his evaluation of the evidence [and]
> assessment of the credibility of witnesses...."). However, the ALJ must
> specifically identify and explain what evidence he found not credible
> and why he found it not credible. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d
> Cir.1994) (citing *Stewart v. Sec'y of Health, Education and Welfare*,
> 714 F.2d 287, 290 (3d Cir.1983)); <u>see also Stout v. Comm'r</u>, 454 F.3d

1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529,

25

416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is well settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–

3p. This includes but is not limited to medical signs and laboratory findings, diagnoses, and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub

nom. <u>Koppenhaver v. Berryhill</u>, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); <u>Martinez v. Colvin</u>, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015); <u>George v. Colvin</u>, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014).

### E.   The ALJ's Decision in This Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek</u>, 139 S. Ct. at 1154. Judged against these deferential standards of review, we

find that substantial evidence supported the ALJ's decision that Vazquez Calderon was not entirely disabled.

The plaintiff's appeal focuses on the ALJ's failure to include limitations from both her severe and nonsevere impairments. In addition, the plaintiff contends that the ALJ erred in his assessment of the medical opinion evidence.

First, with respect to the medical opinion evidence, the ALJ was not required to give Mr. Batista's opinion more weight than the consultative opinion regarding Vazquez Calderon's mental impairments. Rather, we find that this opinion, and the competing view of Dr. Ondis were appropriately weighed by the ALJ under the current prevailing paradigm for analysis of medical opinions, which requires the ALJ to identify the persuasiveness of these opinions, and explicitly address their supportability and consistency. Here, as the ALJ explained, the views expressed by Dr. Ondis with respect to the plaintiff's mental limitations was supported by the treatment records for Vazquez Calderon. Further, this opinion was congruent with her self-reported activities of daily living. On the other hand, the ALJ found that Mr. Batista's limitations of marked impairments was not supported by the clinical record.

With respect to the opinion evidence regarding Vazquez Calderon's physical limitations, the ALJ considered the opinion of Dr. Huitt but found that some of the limitations identified by Dr. Huitt were not fully supported by her own clinical examination findings, and thus found this opinion only partially persuasive. The ALJ

found the opinion of Dr. Nugent to be supported by the longitudinal treatment notes and clinical examination findings. Therefore, substantial evidence supported the ALJ's findings that these state agency opinions had greater persuasiveness than the more limited views expressed by Dr. Huitt and Mr. Batista. Under the current prevailing standards governing assessment of medical experts, and given the deferential standard of review we must apply, there was no error here.

Further, the plaintiff's argument that the ALJ failed to consider limitations from her severe and nonsevere impairments is without merit. The ALJ considered all of the record evidence, which showed largely normal examination findings, both physical and mental, throughout the relevant period. While the plaintiff testified to more severe limitations, the ALJ found that her statements were not entirely consistent with her treatment records and these largely normal examination findings. The ALJ found her migraines to be a nonsevere impairment, as she had not persistently sought treatment for this condition. The ALJ recognized that the plaintiff suffered from insomnia, and that it was noted as a side effect of her medications, which he accounted for in his decision. (Tr. 32). The ALJ also recognized that the plaintiff was limited in her activities of daily living but found that her statements were not consistent with what was reported in her medical records. (Id.)

Ultimately, the ALJ considered Vazquez Calderon's statements regarding her impairments and found that she was not as limited as she alleged. The treatment

records showed that she had 5/5 strength in her bilaterally upper and lower extremities, 5/5 grip strength, a normal gait, negative straight leg raise tests, and normal range of motion in her neck, back and wrists. With respect to her mental impairments, the treatment records indicated normal thought processes, intact insight and judgment, appropriate affect, normal thought content, and normal concentration. Thus, the ALJ found that Vazquez Calderon was not as limited as she had alleged, and moreover, that she was not entirely disabled. These findings were supported by substantial evidence; that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154. Accordingly, there are no grounds to set aside the ALJ's decision based upon this symptom evaluation.

At bottom, it appears that the plaintiff is requesting that this court re-weigh the medical and opinion evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record.") (internal citations omitted)). Rather, our task is simply to determine whether the

ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate for the purpose of further assessing this opinion evidence.

In sum, on its merits the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting de novo might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and we will affirm the Commissioner's final decision.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: August 12, 2022